IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNEXTELECOM CO., LTD., | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MELVIN BROWN et al., | : | No. 13-4605 |
| *Defendants*. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                              OCTOBER 14, 2014

Plaintiff AnnexTelecom Co., Ltd. ("Annex"), a South Korean corporation with its principal place of business in South Korea, filed suit against a host of defendants in connection with a business deal apparently gone bad. Annex allegedly invested money in connection with the production of a worldwide singing talent competition that Defendants would produce. Annex asserts that the Defendants took its money without performing their obligations under the contract, and that the Defendants are liable to Annex for violations of Pennsylvania law. Annex claims that it served copies of the summons and the Complaint on the Defendants,[1] but the Defendants failed to appear or defend the action, and the Clerk of Court entered default upon Annex's request. Annex then filed Motions for Default Judgment as to each of the defendants. Upon review of the Complaint and the Motions, the Court ordered Annex to file a supplemental brief on the issue of personal jurisdiction. Annex has, in response to the Court's directive, filed a Supplemental Brief in Support of Motions for Default Judgment.[2]

---

[1]   As the Court will explain, several of the corporate defendants were improperly served. *See infra* Part I.B.1.

[2]   For reasons unrelated to the issue at hand, the Court ordered counsel for Plaintiff to address certain deficiencies in the language used by counsel in the Complaint. While counsel has endeavored to do so, counsel's endeavors did not address the issues discussed in this

I.     DISCUSSION

The Court may only grant a motion for default judgment if it has both (1) subject matter jurisdiction over the case, and (2) personal jurisdiction over the parties against whom a judgment for affirmative relief is sought. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) ("[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). Upon entry of default against a defendant, the Court "must accept as true the jurisdictional allegations in the complaint." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 439 (E.D. Pa. 2006). Annex can try to satisfy the burden of proving personal jurisdiction with a *prima facie* showing and "may rest [its] argument on [its] pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id.* (quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

A.     **Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Congress has granted district courts original jurisdiction over claims valued at more than $75,000 between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). For purposes of diversity jurisdiction, a corporation is a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." *Id.* § 1332(c). Diversity jurisdiction requires that there be complete diversity, so that "in cases with multiple plaintiffs or multiple defendants, no plaintiff

---

Memorandum. An Amended Complaint has been filed but does not attempt to cure the issues discussed here.

be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010); *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

A court with original jurisdiction may assert supplemental jurisdiction over claims arising from the same case or controversy, but it may not assert supplemental jurisdiction over claims by plaintiffs against certain defendants "when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(a), (b). Thus, plaintiffs may not use supplemental jurisdiction in diversity cases to circumvent the complete diversity rule. *See, e.g.*, *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 375-77 (1978); *Exxon Mobil Corp.*, 545 U.S. at 553-54.

Annex argues that the Court has diversity jurisdiction over its state law claims against Melvin Brown, Rich Music Entertainment, MBMG, LLC, Konvict Muzik Group, and World Music Icon, LLC (collectively, the "American Defendants") under 28 U.S.C. § 1332(a)(2). Annex further argues that the Court has supplemental jurisdiction over its state law claims against Sun Keun Lee and On-Spot Enterprises Korea (collectively, the "South Korean Defendants") under 28 U.S.C. § 1367. Annex is a South Korean corporation with its principal place of business in South Korea and registered to do business in Pennsylvania. *See* Compl. at 1-2. Annex claims that the American Defendants are citizens of either Virginia or Georgia, and that the South Korean Defendants are citizens of South Korea.[3] *See id.* at 2-3; Supp. Br. at 2.

---

[3] Annex's Complaint alleges that On-Sport Enterprises Korea is a subsidiary of On-Spot Enterprises LLC, which is organized under the laws of Virginia. *See* Compl. at 3. However, Annex's Supplemental Brief argues that jurisdiction over On-Spot Enterprises Korea is based on supplemental jurisdiction, presumably because it is not diverse from the South Korean plaintiff. *See* Supp. Br. at 2. The Court will assume that Annex's Supplemental Brief states its position regarding the citizenship of the parties, but even if On-Spot Enterprises Korea was treated as a

3

This Court has diversity jurisdiction over Annex's state law claims against the American Defendants because those claims meet the amount-in-controversy requirement and the controversy is between a citizen of South Korea and citizens of Virginia and Georgia. However, this Court may not assert supplemental jurisdiction over Annex's state law claims against the South Korean Defendants because the parties are not completely diverse, namely, here there is a South Korean plaintiff suing South Korean defendants. Annex cannot use § 1367 to circumvent the complete diversity requirement of § 1332 and assert state law claims against the South Korean Defendants. Annex's claims against the South Korean Defendants are therefore dismissed for lack of subject matter jurisdiction.

### B.    Personal Jurisdiction

Turning to Annex's claims against the American Defendants, the Court must now assure itself that it has personal jurisdiction over the remaining defendants.

#### 1.    Service of Process

The Court will first consider the adequacy of Annex's service of process on the American Defendants. "A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Effective service of process is therefore a prerequisite to proceeding further in a case." *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991). "A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside." *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985). "When a court asked to enter default judgment against a party concludes that it lacks personal jurisdiction over the party, the appropriate procedure is to dismiss *sua sponte* for lack of personal jurisdiction." *D'Onofrio*, 430 F. Supp. 2d at 438.

---

Virginia citizen for jurisdictional purposes, the Court still lacks personal jurisdiction and the facts would produce the same result. *See infra* at Part I.B.2.

Annex's proof of service on the American Defendants[4] (Docket Nos. 6-10) states that William Robbins served the American Defendants at Mr. Brown's residence in Virginia. In his Affidavits of Service—identical as to all the American Defendants—Mr. Robbins explains that Mr. Brown refused to come to the door to accept service, so he left the summonses with Mr. Brown's mother Betty Brown. The Affidavits also state that Ms. Brown is a person of suitable age and discretion living at Mr. Brown's residence, and that a copy of the summons was also mailed to Mr. Brown's last known address.

The Federal Rules of Civil Procedure govern the adequacy of service in this case. "[T]he rules distinguish between service of one in his individual capacity, [Rule 4(e)], and service of one as a representative of a corporation, [Rule 4(h)]." *Gottlieb v. Sandia Am. Corp.*, 452 F.2d 510, 514 (3d Cir. 1971). One method of serving an individual in the United States is "substituted service," or "leaving a copy of [the summons and of the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," Fed. R. Civ. P. 4(e)(2)(B).

Although substituted service is permitted for a defendant in his or her individual capacity, a corporation may only be served in the United States either (a) in the manner prescribed by the law of the state where the district court is located or where service is made, or (b) by personal service on "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ," *id.* 4(h)(1). Neither Pennsylvania (the state in which this district is located) nor Virginia (the state in which the district in which service was supposedly made is located) permit corporations to be served through the "substituted service" permitted by Rule 4(e). *See* Pa. R. Civ. P. 424; Va. Code § 8.01-299 (requiring personal

---

[4] The South Korean Defendants waived service of process. *See* Docket Nos. 4-5.

5

service of "any officer, director, or registered agent of such corporation" or substituted service on the State Corporation Commission); *see also Sampath v. Concurrent Techs. Corp.*, 227 F.R.D. 399, 402 (W.D. Pa. 2005) ("[U]nder Pennsylvania law, a plaintiff may effect proper service on a corporation by handing a copy of the summons and the complaint to an officer or managing or general agent.").

The service on Mr. Brown in his individual capacity was proper under Rule 4(e) because Mr. Robbins's Affidavit states that he left a copy of the summons and of the complaint with at Mr. Brown's residence with Ms. Brown, an individual of suitable age and discretion who apparently resides there. However, that same service was improper as to Rich Music Entertainment, MBMG, LLC, Konvict Muzik Group, and World Music Icon, LLC. Proper service would have required that Mr. Robbins personally serve Mr. Brown in his capacity as the official representative of those defendants. Mr. Robbins could have served someone else authorized to accept service on behalf of the corporations, but there is nothing to suggest that Ms. Brown had any connection to them. Hence, although the service of process was adequate as to Mr. Brown individually, the attempted service on the corporations failed to meet the requirements of the Federal Rules, Pennsylvania law, or Virginia law. Thus, the Clerk's entry of default against all the American Defendants, except for Mr. Brown in his individual capacity, was in error. The Court will deny the Motions for Default as to Rich Music Entertainment, MBMC, LLC, Konvict Muzik Group, and World Music Icon, LLC, and dismiss Annex's claims against them for lack of personal jurisdiction.

### 2. General Jurisdiction

Because Mr. Brown was properly served, the Court must determine whether the other requirements of personal jurisdiction have been met. "Under Federal Rule of Civil Procedure

4(e), a district court may assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Remickv v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (internal quotation marks omitted). Pennsylvania's long-arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). As a result, the question of personal jurisdiction will turn on the issue of constitutional due process.

The due process clause of the Fourteenth Amendment requires a two-part showing to establish personal jurisdiction. First, the plaintiff must establish that the defendant has constitutionally sufficient "minimum contacts" with the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Second, the assertion of personal jurisdiction over the defendants must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. Specific jurisdiction exists only if the cause of action arises out of a defendant's forum-related activities, so that the defendant "should reasonably anticipate being haled into court" in that forum. *D'Onofrio*, 430 F. Supp. 2d at 440 (quoting *Vetrotex Certanteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996)). In contrast, "[g]eneral jurisdiction is based on the defendant's 'continuous and systematic' contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *D'Onofrio*, 430 F. Supp. 2d at 440 (quoting *Remick*, 238 F.3d at 255). Here, Annex argues only that the Court has general jurisdiction over the Defendants, so the Court will not address the possibility of specific jurisdiction.

General jurisdiction requires "a very high threshold of business activity." *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 890 n.2 (3d Cir. 1981). The facts required to establish sufficient contacts for general jurisdiction must be "extensive and persuasive." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982) (citation omitted). In other words, the plaintiff must demonstrate "significantly more than minimum contacts." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). The party's affiliations with the state must be "so constant and pervasive as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) (internal quotation marks omitted). "[I]n the years since *Goodyear*, Pennsylvania district courts have indeed treated the 'at home' language as a precedential requirement, and not illustrative." *Colony Nat'l. Ins. Co. v. DeAngelo Bros., Inc.*, No. 13-0401, 2014 WL 1315391, at *4 n.3 (M.D. Pa. Mar. 28, 2014).[5]

Annex argues that the Court has general jurisdiction over Mr. Brown because (a) Mr. Brown recruited artists in Pennsylvania, (b) Mr. Brown's agent visited Pennsylvania, (c) Konvict Muzik's artists performed in Pennsylvania, and (d) songs by Konvict Muzik's artists were broadcasted in Pennsylvania. The Court will address each of these arguments in turn.[6]

---

[5] Annex has failed to establish that the South Korean Defendants had any contacts with Pennsylvania, let alone contacts that were sufficiently continuous and systematic to support general jurisdiction. Thus, even if the Court had subject matter jurisdiction over Annex's state law claims against the South Korean Defendants, the Court would dismiss them for lack of personal jurisdiction.

[6] Annex based its arguments on the fact that Mr. Brown is the alter ego of all the American Defendants, such that sufficient contacts between any one of them and the forum state will be sufficient to establish personal jurisdiction. *See* Supp. Br. at 8. The Court will assume that is the case for purposes of deciding the issue of personal jurisdiction.

First, to support its claim that Mr. Brown recruited artists in Pennsylvania, Annex relies on (1) notice from the 2012 Songwriters Composers Music Conference stating that Konvict Muzik would be in Philadelphia to search for talent, *see* Supp. Exs. M-N, and (2) a news report that Konvict Muzik agreed to represent a Philadelphia artist in 2011, *see* Supp. Ex. O. Circumstantial evidence of isolated visits to Pennsylvania is not enough to show that the American Defendants are "essentially at home" in Pennsylvania. Moreover, it is by no means clear that Konvict Muzik ever did business in Pennsylvania when it signed the Philadelphia-based artist.

Second, Annex relies on four tweets from 2013-2014 to support its claim that Mr. Brown's agent visited Philadelphia. *See* Supp. Exs. P-T. Again, circumstantial evidence of isolated visits to Pennsylvania—on four occasions over a two year period—cannot justify general jurisdiction.

Third, to support its claim that Mr. Brown's artist clients performed in Pennsylvania, Annex produces two unconfirmed rosters of Konvict Muzik artists and a list of those artists' performances in Pennsylvania. *See* Supp. Exs. U-Y. In addition to the fact that Annex's evidence cannot establish that Mr. Brown or Konvict Muzik actually represents any of the artists mentioned in its exhibits, "the alleged physical presence of [artists] or their agents during occasional concerts is plainly not a 'continuous and systematic' contact . . . ." *Regan v. Loewenstein*, 292 F. App'x 200, 205 (3d Cir. 2008).

Finally, Annex throws a "Hail Mary" and argues that general jurisdiction exists because Mr. Brown earned commissions from radio broadcasts in Pennsylvania. More specifically, Annex has presented evidence that Pennsylvania radio stations played songs by Akon (an alleged client of Konvict Muzik), that Akon is a member of the American Society of Composers,

Authors, and Publishers ("ASCAP"), that radio stations pay ASCAP for the right to broadcast songs by ASCAP members, and that talent managers are ordinarily paid by commission. *See* Supp. Exs. AA-DD. However, Annex's conclusory allegations and the Wikipedia entry for "Talent Manager" are hardly proof that any of the American Defendants in fact earned any commissions from Pennsylvania radio stations, let alone that Mr. Brown was "essentially at home" in Pennsylvania as a result of those payments. *See Jones v. Synthes USA Sales, LLC*, No. 08-2060, 2010 WL 3311840, at *6 n.7 ("Wikipedia is a free web-based encyclopedia written by individuals from all around the world. According to the website, almost all of its articles can be edited by anyone accessing the site which places its reliability and accuracy in question.").

Even accepting as true the allegations in Annex's Complaint and Supplemental Brief, Annex has not presented "extensive and persuasive facts demonstrating connections with the forum state" *O'Connor v. Sandy Lane Hotel Co., Ltd.*, No. 04-2436, 2005 WL 994617, at *2 (E.D. Pa. Apr. 28, 2005). The Court lacks personal jurisdiction over Mr. Brown[7] and the claims against him must be dismissed.

## II.   CONCLUSION

For the foregoing reasons, the Court will deny Annex's Motions for Default Judgment and dismiss the case in its entirety for lack of subject matter jurisdiction and personal jurisdiction.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[7] Annex submits the same basis for general jurisdiction over Mr. Brown as for general jurisdiction over those American Defendants who were improperly served. Thus, even if Annex had properly served all the American Defendants, the arguments in favor of general jurisdiction over any of them are similarly flawed, and the absence of general jurisdiction as to them is an impediment to this case going forward in federal court.